UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
YOLANDA DELIA ARIAS SANTOS,

                      Plaintiff,                           18-cv-10835 (PKC)

     -against-                                   OPINION
                                                           AND ORDER

LATAM AIRLINES GROUP S.A.,

                      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Yolanda Delia Arias Santos asserts a negligence claim against defendant LATAM Airlines Group S.A. ("LATAM") arising from the spill of a hot beverage during a flight from New York to Guayaquil, Ecuador. (Am. Compl.; Doc 11.) The spill allegedly resulted in second and third-degree burns to Santos's body. (Id.) LATAM moves to dismiss this action on the ground of forum non conveniens. It contends that the plaintiff, virtually all of the witnesses, and relevant evidence are located in Ecuador. It avers that the courts of the Republic of Ecuador provide an adequate and more appropriate forum for litigation of this claim. For the reasons discussed below, LATAM's motion to dismiss will be granted.

BACKGROUND

        Santos is a citizen and resident of the Republic of Ecuador. (Id. ¶4.) LATAM is a foreign corporation authorized to do business under the laws of the state of New York (id. ¶5), with its headquarters and principal place of business in Santiago, Chile (Affidavit of Grecia Sosa ("Sosa Aff.") ¶3; Doc 23.) LATAM is a commercial airline that operates daily flights into and out of New York's John F. Kennedy International Airport. (Am. Compl. ¶5.) Santos alleges that on a flight from New York to Guayaquil, Ecuador, a flight attendant employed by LATAM spilled

boiling tea on Santos during beverage service. (Id. ¶¶12−13.) Santos sustained injuries as a result of the spill. (Id. ¶¶14−15.) Santos filed the initial complaint in this action on December 5, 2018 (Doc 8) and amended her complaint shortly thereafter (Doc 11.)[1]

LEGAL STANDARD FOR FORUM NON CONVENIENS

Forum non conveniens allows a district court to "resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947)). "District courts have broad discretion in deciding whether to dismiss an action on the ground of *forum non conveniens*, but should be guided by the 'central notions of . . . the convenience of the parties and their witnesses and that justice be served.'" Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 477 (S.D.N.Y. 2006) (quoting Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC, 81 F.3d 1224, 1227 (2d Cir. 1996)), aff'd, 233 F. App'x 83 (2d Cir. 2007). District courts in this Circuit have exercised their discretion to review forum non conveniens motions for claims arising under the Montreal Convention and its predecessor, the Warsaw Convention. See Khan v. Delta Airlines, Inc., 10 cv 2080 (BMC), 2010 WL 3210717, at *2−3 (E.D.N.Y. Aug. 12, 2010); In re Air Crash Off Long Island, N.Y. on July 17, 1996, 65 F. Supp. 2d 207, 213−15 (S.D.N.Y. 1999).

The Second Circuit has articulated a three-part test to guide district courts' discretion, as follows:

---

[1] The Amended Complaint is not a model of clarity. It has a header entitled "General Allegations Applicable to All Counts" (Doc 11 at 2), followed by a single non-numbered count entitled "Negligence" (id. at 3), which the Court understands to allege at least in part a state law claim. However, the Amended Complaint alleges the Court has federal question jurisdiction because "Plaintiff's claim is asserted under the [Convention for the Unification of Certain Rules of International Carriage by Air, May 28, 1999, S. Treaty Doc. No. 106−45 (2000) ('Montreal Convention')]." (Id. ¶2.) The Amended Complaint includes in the damages section a demand for "[a]ny and all other damages to which Plaintiff may be entitled under applicable law, including The Montreal Convention, which establishes strict liability against the Defendant in the amount of $175,000." (Id. at 5.) Where applicable, the Court construes the pleadings liberally.

> [a]t step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex, 416 F.3d at 153 (citing Iragorri v. United Techs. Corp., 274 F.3d 65, 73−74 (2d Cir. 2001) (en banc)).

"[T]here is no algorithm that assigns precise weights to the factors that inform *forum non conveniens* determinations. The doctrine instead is intensely practical and fact-bound. The most that may be said is that courts reach informed judgments after considering all of the pertinent circumstances." First Union Nat'l Bank v. Paribas, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001), aff'd, 48 F. App'x 801 (2d Cir. 2002).

DISCUSSION

        I.      Deference to Plaintiff's Choice of Forum is Minimal

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 508; see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981) (review of forum non conveniens motions starts with "a strong presumption in favor of the plaintiff's choice of forum"). The defendant bears the burden of demonstrating that its proposed alternative is more appropriate. Aguinda v. Texaco, Inc., 303 F.3d 470, 476 (2d Cir. 2002). The degree of deference to a plaintiff's choice of forum operates on a "sliding scale." Iragorri, 274 F.3d at 71. "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience

favor the conduct of the lawsuit in the United Sates, the more difficult it will be" to dismiss on forum non conveniens grounds. Id. (footnote omitted).

"[T]he central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." Piper Aircraft, 454 U.S. at 256. Thus, "when a foreign plaintiff chooses a U.S. forum, it is much less reasonable to presume that the choice was made for convenience." Iragorri, 274 F.3d at 71 (internal quotation marks and citation omitted). "These presumptions, however, may not apply, either at all or with full force, to forum choices in particular cases." Norex, 416 F.3d at 154. The Iragorri court identified certain factors to consider when reviewing the totality of the evidence to determine whether choice of forum is motivated by convenience. These include: (1) "the convenience of the plaintiff's residence in relation to the chosen forum;" (2) "the availability of witnesses or evidence to the forum district;" (3) "the defendant's amenability to suit in the forum district;" (4) "the availability of appropriate legal assistance;" and (5) "other reasons relating to convenience or expense." 274 F.3d at 72. A district court is not required to address all factors in its decision. Norex, 416 F.3d at 155. When a foreign plaintiff chooses a United States forum, "a plausible likelihood exists that the selection was made for forum-shopping reasons, such as the perception that United States courts award higher damages than are common in other countries." Iragorri, 274 F.3d at 71.

The totality of facts suggests that Santos's choice of forum in this District is entitled to minimal deference. Santos is a resident and citizen of Ecuador. (Affidavit of Plaintiff ¶2; Doc 25; see Am. Compl. ¶4; Doc 11.) She has a B-1 Visa that allows her to travel to the United States through September 1, 2020. (Pl.'s Aff. ¶3.) She regularly travels to New York to see her daughter and granddaughter and has traveled to the United States approximately thirty times since November 2005. (Id. ¶¶5−6.) On at least one occasion, she stayed in New York for a period of

two and a half months, (id. ¶¶9−10) and her daughter states that she frequently stays for several months at a time (Affidavit of Mariella Gonzalez ¶¶6−7; Doc 26.)

Although Santos travels with some frequency to New York, these intermittent visits are not enough to suggest that it would be more convenient for her to litigate in New York. Her primary place of residence is Ecuador. Her other reasons for choosing New York as a forum, including the fact that she purchased the airline ticket in New York in U.S. dollars, has a U.S. credit card, and has a doctor in New York, are similarly unpersuasive. (Affidavit of Michelle Viana ¶5; Doc 27.)[2] Though the record provides no direct evidence that Santos has an improper motive in bringing suit in this district, she has provided no reasons for suing in New York that would entitle her choice to more than minimal deference.

The availability of witnesses and evidence weighs heavily in favor of an Ecuadorian forum. Norex, 416 F.3d at 156 ("[A]t the first step of [the] analysis, the issue is not whether witnesses and evidence are unavailable in the defendant's preferred forum, but whether they are more available in plaintiff's chosen foreign forum than in its home forum.") All of the flight attendants from the LATAM flight reside in Ecuador. (Sosa Aff. Ex. A.) Nearly all of the documents submitted by LATAM's corporate counsel as records kept in the ordinary course of business related to the incident are in Spanish. (See id. Exs. B, C, D.) Santos received initial and

---

[2] No evidence has been presented to the Court suggesting that Santos's doctor in New York has seen or treated her in connection with her injuries sustained on the LATAM flight. Counsel for Santos has stated only that "should the Defendant desire to have a physician of its choice examine the Plaintiff, Plaintiff will present herself for the examination by any New York based physician." (Opp. Mem. at 12−13; Doc 28.)

primary medical care in Ecuador. (Pl.'s Aff. ¶¶14−15; Doc 25.) There is no evidence that Santos has received any medical care in the United States to date that is relevant to her claims in this suit.[3]

Santos claims that her choice of forum should be entitled to greater deference because LATAM's key witness, the flight attendant who spilled coffee, is "working and often present in New York City." (Opp. Mem. at 8; Doc 28 (citing Sosa Aff. ¶12; Doc 23.).) But LATAM's corporate counsel has sworn that "no flight or cabin crewmembers at LATAM own or lease an apartment in the New York area and their visits to New York are infrequent (possibly seven or eight times in the course of a year) and they are only here for [a]n overnight trip." (Sosa Aff. ¶12; Doc 23.)

LATAM acknowledges that pursuant to the Montreal Convention, "jurisdiction is as equally present and proper in Ecuador as it is in the United States." (Reply Mem. at 3; Doc 30; see Def.'s Mem. at 5; Doc 24.)[4] Article 33 of the Montreal Convention recites five available jurisdictions for a plaintiff to initiate a personal injury action under the Convention, including where the carrier has a "place of business through which the contract has been made," "the place of destination," and the "principal and permanent residence" of the passenger. Montreal Convention Art. 33(1), (2); see Baah v. Virgin Atlantic Airways Ltd., 473 F. Supp. 2d 591, 594 (S.D.N.Y. 2007). No evidence has been offered that jurisdictional convenience informed Santos's choice of a New York forum. See Norex, 416 F.3d at 155.

There is no evidence on the record to suggest either party would be unable to secure appropriate legal assistance in either forum. As for convenience and expense, both parties are

---

[3] Santos states that she is "in the process of scheduling and obtaining a medical evaluation for the purpose of receiving a medical opinion on . . . plastic surgery . . . . for correcting the skin issues . . . ." (Pl.'s Aff. ¶18.) No evidence has been presented as to where this evaluation would take place.

[4] Despite the lack of clarity in the Amended Complaint, the parties appear to agree that the Montreal Convention applies to Santos's claims. (Def.'s Mem. at 9; Doc 24; Opp. Mem. at 6; Doc 28.)

foreign to the United States but have reasons for being present in both fora ─ LATAM because it has business in both Ecuador in New York, and Santos because she lives in Ecuador and has family in New York.  Still, costs of litigation rise where "there are hurdles and obstacles associated with obtaining discovery and conducting depositions" in a foreign country for suit in U.S. court, including "the likely need for letters rogatory and the delays associated in obtaining . . . records . . . ."  Khan, 2010 WL 3210717, at *5.  Because most if not all relevant evidence is located in Ecuador, costs and expenses will likely be much higher if the suit stays in this Court.  For these reasons, plaintiff receives only minimal deference to her choice of forum.

> II.    Ecuadorian Courts Are an Adequate Alternative Forum

"To secure dismissal of an action on grounds of *forum non conveniens*, a movant must demonstrate the availability of an adequate alternative forum.  If the movant fails to carry this burden, the *forum non conveniens* motion must be denied regardless of the degree of deference accorded plaintiff's forum choice."  Norex, 416 F.3d at 157 (citation omitted).  "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute."  Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003).  Only in "rare circumstances . . . where the remedy offered by the other forum is clearly unsatisfactory" will a forum not be considered adequate.  Piper Aircraft, 454 U.S. at 254 n.22.

LATAM has demonstrated that Ecuador is an adequate alternative forum for this dispute.  It represents that it will submit to jurisdiction and accept service of process in Ecuador.  (Def.'s Mem. at 2, 5; Doc 24.)  LATAM further represents that Ecuadorian courts have jurisdiction over the dispute pursuant to the Montreal Convention, (Reply Mem. at 3; Doc 30), as plaintiff acknowledges (Opp. Mem. at 6; Doc 28); see Khan, 2010 WL 3210717, at *6.  "[T]he competence

of the judges of th[e Ecuadorian] forum to adjudicate this dispute is beyond serious challenge." Gilstrap, 443 F. Supp. 2d at 481; see Aguinda, 303 F.3d at 478−79 (upholding Ecuador as an adequate alternative forum in the dismissal of tort claims on grounds of forum non conveniens and citing similar cases).

Plaintiff states that Ecuadorian courts are inadequate because they have substantial restrictions on discovery and do not have the right to a jury trial. (Opp. Mem. at 10; Doc 28.) Restrictions on discovery or the availability of a jury trial do not make Ecuadorian courts so clearly unsatisfactory as to be an inadequate forum. PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73 (2d Cir. 1998) ("At this stage, considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards, so such a finding is rare.") (citation omitted). "[S]ome inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 982 (2d Cir. 1993) (internal quotation marks and citation omitted); see Gilstrap, 443 F. Supp. 2d at 482. The Second Circuit has held and favorably cited cases holding that lack of trial by jury or lack of discovery procedures as broad as those available in U.S. federal courts do not render a forum inadequate. Blanco, 997 F.2d at 982 (first citing Lockman Found. v. Evangelical All. Mission, 930 F.2d 764, 768 (9th Cir. 1991), then citing In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India, 809 F.2d 195, 198−99, 202−03 (2d Cir. 1987)); see Brown v. Marriott Int'l, Inc., 14 cv 5960 (SLT)(MDG), 2017 WL 4484194, at *5 n.4 (E.D.N.Y. Sept. 29, 2017) (dismissing argument that lack of trial by jury resulted in inadequate alternative forum and collecting cases); In re Alcon S'holder Litig., 719 F. Supp. 2d 263, 273 (S.D.N.Y. 2010) ("Courts in this District have . . . specifically and repeatedly held that the availability of . . . federal-style

discovery is not dispositive of the adequacy of an alternative forum."). Defendant has demonstrated the existence of an adequate alternative forum.

### III. Public and Private Interest Factors Weigh in Favor of Dismissal

At the final step of the test, a district court must balance private and public interest factors. Private interest factors include (1) "the relative ease of access to sources of proof;" (2) "availability of compulsory process to compel unwilling witnesses to appear;" (3) the cost of procuring the attendance of witnesses willing to appear;" and (4) "'all other practical problems.'" Gilstrap, 443 F. Supp. 2d at 482 (quoting Gulf Oil, 330 U.S. at 508). Public interest factors include (1) "court congestion;" (2) "the relation of the litigation to the chosen forum as opposed to its relation to the proposed alternative forum;" and (3) "the interest in having the dispute adjudicated in a forum that is 'at home with the . . . law that must govern the case." Id. (quoting Gulf Oil, 330 U.S. at 508−09).

On private interest factors, because "[p]laintiff and defendant reside in different countries, any forum will be inconvenient for someone." Int'l Equity Invs., Inc. v. Cico, 427 F. Supp. 2d 503, 506 (S.D.N.Y. 2006). That said, the totality of private interest factors weighs in favor of dismissal. As mentioned above, the evidence relevant to this case is primarily in Ecuador. Medical records and doctors who treated Santos are in Ecuador. The flight attendants and plaintiff, the only people Santos has identified as "key witnesses," (Opp. Mem. at 12; Doc 28) reside in Ecuador. To the extent plaintiff raises allegations related to disembarking procedures upon arrival at the Guayaquil airport, (see Am. Compl. ¶19 (arguing LATAM failed to notify paramedics,

timely request an ambulance on the runway, and disembark plaintiff first)), these events occurred in Ecuador and witnesses would likely be there.

The parties offer no evidence on the availability of compulsory process in either fora. LATAM's employees would at least be subject to compulsory process in New York. Fasano v. Juoqing Li, 16 cv 8759 (KPF), 2017 WL 6764692, at *10 (S.D.N.Y. Dec. 29, 2017) (stating employees of parties under the jurisdiction of courts in this district are subject to compulsory process). Thus, this factor of the private interest test slightly disfavors dismissal.

On the other hand, for cooperative witnesses, "both parties will still have to pay to transport their respective witnesses to New York," Khan, 2010 WL 3210717, at *7. For Santos, costs would likely be much lower in bringing witnesses who already live in Ecuador to court there. Because LATAM is an airline, its costs in bringing witnesses to either New York or Ecuador would be minimal. Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs. Corp., 421 F. Supp. 2d 741, 768 (S.D.N.Y. 2006) (weighing the costs of producing witnesses within defendant's control). And "[w]hile deposition testimony from foreign witnesses could likely be obtained through the use of letters rogatory and thereafter presented at trial [in New York], such a process has been recognized as time-consuming, and there is, of course, a preference for live testimony." Gilstrap, 443 F. Supp. 2d at 488. Also, there is no guarantee that letters rogatory issued by this Court would produce the required testimony for use in a trial in New York because Ecuador is not a signatory to the Hague Convention on the Taking of Evidence Abroad. See Hague Conference on Private International Law, Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial

Matters, Ch. 20, Status Table, https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (last accessed Apr. 8, 2019).

Evidence related to Santos's proposed loss of income damages and pain and suffering due to her medical condition will also be located in Ecuador. Am. Compl. ¶22; Iragorri, 274 F.3d at 74 ("The court should consider also whether the plaintiff's damages are genuinely in dispute and where the parties will have better access to the evidence relating to those damages."); see Khan, 2010 WL 3210717, at *8.

Plaintiff will not be prejudiced by dismissal at such an early stage of litigation. As discussed already, the parties will "endure substantial time and cost in essentially taking a case that is centered in [a foreign forum] and transporting it to New York." Khan, 2010 WL 3210717, at *8.

Finally, "[i]ssues concerning the enforceability of a judgment should also be considered." Murray v. British Broadcasting Corp., 81 F.3d 287, 294 (2d Cir. 1996). Neither party suggests enforceability is a relevant distinction between fora in this case.

For public interest factors, neither party has discussed court congestion, and the Court considers this a neutral factor. There are presently six vacancies on this Court, but this single case assigned to a senior judge ought not add materially to any delay in this District.

Santos identifies two local interests that she claims weigh in favor of having this Court adjudicate her claims. Specifically, she identifies New York's interest in assuring residents and visitors that airlines comply with federal rules and regulations, and its interest in protecting

residents and visitors from airlines with inadequate health and safety standards that conduct business in New York.  (Opp. Mem. at 13; Doc 28.)

New York does not have a specific interest in this dispute because neither party is a resident of New York.  There is no reason why Ecuador would not have the same general interests in promoting health and safety for its airline-traveling residents and visitors.  See Khan, 2010 WL 3210717, at *9; Gilstrap, 443 F. Supp. 2d at 490 ("When most of the events took place in a foreign forum or forums and involve mostly foreign parties, the United States and its citizens have less interest in the resolution of the action than the foreign forum.") (internal quotation marks and citation omitted).  Ecuador will have more interest in the suit as the plaintiff is an Ecuadorian citizen.  Fasano, 2017 WL 6764692, at *11 ("Though both the [foreign country] and New York have a legitimate interest in adjudicating this dispute, the [foreign country] has a closer nexus to the parties and events that are at the heart of this case."); Khan, 2010 WL 3210717, at *10 (finding facts favored dismissal where, although a "New York passenger is not immune from suffering a similar fate as [plaintiff], . . . the issues that would be put before a local jury have very little connection to this forum or what took place in New York").  New York's interest in assuring airline compliance with federal rules and regulations does not weigh heavily in the Court's analysis because Santos has not alleged violations of any federal rules or regulations.  See generally Am. Compl.

To the extent the claim is construed under the Montreal Convention (see Montreal Convention Article 17 (requiring plaintiff to establish an accident resulting in bodily injury that took place while on board an aircraft or during embarking or disembarking)), neither this Court

nor an Ecuadorian court should have difficulty in applying the treaty to the facts alleged, Khan, 2010 WL 3210717, at *9.

To the extent Santos asserts a state law claim for negligence, this claim is likely preempted by the Montreal Convention. Fishman v. Delta Air Lines, Inc., 132 F.3d 138, 141 (2d Cir. 1998) (in-flight scalding preempted by the Montreal Convention's predecessor); Kruger v. Virgin Atl. Airways, Ltd., 976 F. Supp. 2d 290, 300−01 (E.D.N.Y. 2013), aff'd, 578 F. App'x 51 (2d Cir. 2014) (stating in a personal injury case that, "[i]f applicable, the [Montreal] Convention would preempt any state law claims"); see Sanches-Naek v. TAP Portugal, Inc., 260 F. Supp. 3d 185, 191 (D. Conn. 2017); Paradis v. Ghana Airways Ltd., 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004) (similar).

If not preempted, New York courts have adopted an interest analysis test for choice of law in tort actions that would likely favor adopting a choice of Ecuadorian law for reasons already discussed. GlobalNet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 384−85 (2d Cir. 2006) (describing New York courts' interest analysis test as considering which jurisdiction has "the greatest interest in the ligation" and "significant contacts," which "are, almost exclusively, the parties' domiciles and the locus of the tort" (quotation marks and citation omitted)). "Though the Court need not ultimately decide the conflict of laws issue for purposes of [a motion to dismiss on the grounds of forum non conveniens], the likely application under New York's choice of law rules of foreign law to this case weighs against retention of the claim." Gilstrap, 443 F. Supp. 2d

at 491 (quotation marks and citation omitted).  Taken together, the totality of the private and public interest factors weighs in favor of dismissal.

CONCLUSION

Having assessed LATAM's motion pursuant to the standards established in <u>Iragorri</u> and other cases, the motion (Doc 22) to dismiss on the grounds of <u>forum non conveniens</u> is GRANTED.  Dismissal is conditioned upon (a) LATAM's consent to the jurisdiction of the courts of the Republic of Ecuador; and (b) LATAM waiving any statute of limitations defenses that may have arisen since the commencement of this action in the Southern District of New York provided that plaintiff commences such action within a period of 90 days after the date of this Order.  The Clerk is directed to terminate the motion (Doc 22) and close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 17, 2019